Octavia NOVAK, Petitioner,

v.

Rhonda Ray STEVENS, Respondent.

No. B–8647.

Supreme Court of Texas.

March 19, 1980.

Rehearing Denied April 16, 1980.

Gerald B. Shifrin and Dudley Mann, El Paso, for petitioner.

George T. Thomas, Big Spring, for respondent.

POPE, Justice.

The questions presented are whether a district court, sitting in probate, has jurisdiction to hear an application for the probate of a will and a will contest and also to construe a will to determine whether it was a contractual will. The district court consolidated two probate matters for trial and then rendered one summary judgment which denied probate of a 1968 will and rendered another summary judgment that admitted to probate a 1976 will. The court construed the 1968 will as a noncontractual will and refused to impress a constructive trust upon the estate. The court of civil appeals reformed the judgment, holding that the district court lacked jurisdiction to construe the 1968 will but that, assuming the court had jurisdiction, a summary judgment should not have been granted which denied the contractual nature of the 1968 will. 583 S.W.2d 669. We reverse the judgment of the courts below and render

judgment that the district court had jurisdiction, that the 1968 will was contractual, and that a constructive trust should be impressed upon the estate property.

On October 22, 1968, P. Y. and Jessie Marie Tate executed a joint will leaving to the survivor all of the estate which either or both owned with the remainder going to Mrs. Tate's granddaughter, Rhonda Ray Stevens. After P. Y. Tate died in 1972, Jessie Marie Tate probated the will and took under it. On March 25, 1976, Jessie Marie Tate executed a new will which revoked the 1968 will. By her second will, she left her wedding ring and a described piece of realty to Rhonda Ray Stevens, but she left all of the remainder of her property to Mrs. Tate's sister, Octavia Novak. Mrs. Tate died on May 16, 1976.

Octavia Novak made application to the County Court of Howard County for the probate of the 1976 will, and Rhonda Ray Stevens filed a contest. In a separate proceeding Rhonda Ray Stevens applied to the same court for the probate of the 1968 will and Octavia Novak filed her contest to that application on the grounds that the will was revoked by the 1976 will. On motion, both contested applications were transferred to the District Court of Howard County. The District Court consolidated the two contested causes for trial. Rhonda Ray Stevens then filed an amended pleading contesting the 1976 will in which she alleged that if Mrs. Tate's second will of 1976 should be admitted to probate, the court should impress a constructive trust upon all of the Tate estate by reason of Mrs. Tate's 1968 contractual will.

■ This appeal is procedurally complex. Both Octavia Novak and Rhonda Ray Stevens filed motions for summary judgment in both proceedings. Rhonda Ray Stevens' motions were denied and she, of course, may not appeal from the denial because a denial of a motion for summary judgment is not a final judgment. Appellate Procedure in Texas § 3.5(4) (2d ed. 1979). Octavia Novak also filed motions for summary

judgment in each of the two proceedings asking for judgments in her favor on the entire case. The district court granted Octavia Novak's motions, which had put the 1968 will construction before the court. Each summary judgment in the two cases granted all the relief Octavia Novak sought. The judgments admitted the 1976 will to probate, denied probate of the 1968 Tate joint will, denied Rhonda Ray Stevens' prayer to impress a constructive trust, and remanded the causes to the Probate Docket of the County Court for further proceedings. The judgments granting the Novak motions for summary judgments were, therefore, final appealable judgments, and Rhonda Ray Stevens appealed from those judgments. The whole case is therefore now before this court by reason of the final judgments which disposed of all issues. The rule stated in *Tobin v. Garcia*, 159 Tex. 58, 316 S.W.2d 396, 400–01 (1958) applies, and we shall render the judgment that the courts below should have rendered. *Tobin* says:

If the only order in the trial court is one overruling a motion for summary judgment, then that order is interlocutory and no appeal will lie therefrom. But when, as in this case, both parties file motions for summary judgment and one such motion is granted, then the trial court's judgment becomes final and appealable, and on appeal the Court of Civil Appeals should determine all questions presented. If reversible error is found, the court should render such judgment as the trial court should have rendered, Rule 434, and if the case is brought to this court and the judgment of the Court of Civil Appeals is reversed, we should render such judgment as that court should have rendered. Rules 501 and 505.

The court of civil appeals erred in holding that the district court had no jurisdiction to consider the will contests as well as to construe the 1968 will to determine whether it was a contractual will. On November 6, 1973, an amendment to article V, section 8,

of the Texas Constitution was adopted.[1] The amendment deleted the constitutional provision which limited district courts to appellate jurisdiction and general control over probate matters. The amendment also granted concurrent probate jurisdiction to district courts. The legislature amended section 5 of the Probate Code to authorize the transfer to district courts of contested probate matters in counties where there was no statutory probate court or other statutory court exercising probate jurisdiction.[2]

Prior to the amendments of the Constitution and the Probate Code, the divided jurisdiction between probate courts and district courts often compelled unnecessary trials—one in the probate court to hear a will contest, an appeal to the district court, and another separate cause in the district court to construe the same will. The amendments were intended to permit in a single action the trial of probate matters as well as matters incident to an estate.

The court of civil appeals, relying upon precedents that antedated the amendments to the Constitution and Probate Code, held that the district court has jurisdiction to hear the will contests, but no jurisdiction to make a determination whether the 1968 will was contractual and no jurisdiction to impose a constructive trust upon the estate, if the 1968 will was contractual. The court of civil appeals relied upon *Jones v. Chamberlain*, 563 S.W.2d 885 (Tex.Civ.App.—Texarkana 1978, no writ), which in turn cited and

1. Tex.Const. Art. V, § 8:

The district court, concurrently with the county court, shall have the general jurisdiction of a probate court. It shall probate wills, appoint guardians of minors, idiots, lunatics, persons non compos mentis and common drunkards, grant letters testamentary and of administration, settle accounts of executors, transact all business appertaining to deceased persons, minors, idiots, lunatics, persons non compos mentis and common drunkards, including the settlement, partition and distribution of estates of deceased persons and to apprentice minors, as provided by law. In any proceeding involving the general jurisdiction of a probate court, including such specified proceedings, the district court shall also have all other jurisdiction conferred upon the district court by law. The legislature, however, shall have the power, by local or general law, Section 16 of Article V of this Constitution, notwithstanding, to increase, diminish or eliminate the jurisdiction of either the district court or the county court in probate matters, and in cases of any such change of jurisdiction, the legislature shall also conform the jurisdiction of the other courts to such change. The legislature shall have power to adopt rules governing the filing, distribution and transfer of all such cases and proceedings as between district courts, county courts, and other courts having jurisdiction thereof, and may provide that all appeals in such matters shall be to the courts of (civil) appeals. Acts 1973, 63rd Leg., p. 2471, S.J.R. No. 26.

2. Tex.Prob.Code Ann. § 5:

(b) In those counties where there is no statutory probate court, county court at law or other statutory court exercising the jurisdiction of a probate court, all applications, petitions and motions regarding probate, administrations, guardianships, and mental illness matters shall be filed and heard in the county court, except that in contested probate matters, the judge of the county court may on his own motion, or shall on the motion of any party to the proceeding transfer such proceeding to the district court, which may then hear such proceeding as if originally filed in such court. In contested matters transferred to the district court in those counties, the district court, concurrently with the county court, shall have the general jurisdiction of a probate court, and it shall probate wills, appoint guardians of minors, idiots, lunatics, persons non compos mentis, and common drunkards, grant letters testamentary and of administration, settle accounts of executors, transact all business appertaining to deceased persons, minors, idiots, lunatics, persons non compos mentis, and common drunkards, including the settlement, partition, and distribution of estates of deceased persons and to apprentice minors, as provided by law. Upon resolution of all pending contested matters, the probate proceeding shall be transferred by the district court to the county court for further proceedings not inconsistent with the orders of the district court.

\* \* \* \* \* \*

(d) All courts exercising original probate jurisdiction shall have the power to hear all matters incident to an estate, including but not limited to, all claims by or against an estate, all actions for trial of title to land incident to an estate and for the enforcement of liens thereon incident to an estate, all actions for trial of the right of property incident to an estate, and actions to construe wills. Acts 1975, 64th Leg., p. 2195.

relied upon *Huston v. Cole*, 139 Tex. 150, 162 S.W.2d 404 (1942). We disapprove the decision in *Jones v. Chamberlain* and the constitutional amendment has overruled the holdings in similar cases that arose before November 6, 1973. Among those precedents concerning the limited jurisdiction of probate courts which are no longer binding, are: *Tips v. Yancey*, 431 S.W.2d 763 (Tex. 1968); *Nesbett v. Nesbett*, 428 S.W.2d 663 (Tex.1968); *Murphy v. Slaton*, 154 Tex. 35, 273 S.W.2d 588, 597 (1954); *Langehennig v. Hohmann*, 139 Tex. 452, 163 S.W.2d 402 (1942); *Huston v. Cole*, 139 Tex. 150, 162 S.W.2d 404 (1942).

■ We conclude that the two contested probate matters were properly transferred to the district court after contests developed in each of them, Tex.Prob.Code Ann. § 5(b), and the district court in the exercise of its probate jurisdiction had the power to hear "all matters incident to an estate, including but not limited to . . . actions to construe wills." Tex.Prob.Code Ann. § 5(d); *Petsch v. Slator*, 573 S.W.2d 849 (Tex.Civ.App.—Austin 1978, writ ref'd n. r. e.).

The phrase "incident to an estate" has been given a broad meaning. In *English v. Cobb*, 593 S.W.2d 674 (Tex.1979), we held that a county court at law which now has concurrent jurisdiction with that of a district court in probate matters could adjudicate an estate's rights to a savings account in the sum of $15,900.44 because it was a matter incident to an estate. In *Lucik v. Taylor*, 596 S.W.2d 514 (Tex.1980), we approved as an incident to an estate, a probate court's injunction which preserved and protected an estate during the pendency of the probate proceedings. *See also, Parr v. White*, 543 S.W.2d 440 (Tex.Civ.App.—Corpus Christi 1976), *writ ref'd n. r. e. per curiam*, 559 S.W.2d 344 (Tex.1977); *Gordy v. Alexander*, 550 S.W.2d 146 (Tex.Civ.App. —Amarillo 1977, writ ref'd n. r. e.); *Potter v. Potter*, 545 S.W.2d 43 (Tex.Civ.App.— Houston [1st Dist.] 1976, writ ref'd n. r. e.).

The court of civil appeals made the further holding that, assuming the district court had jurisdiction to construe the 1968 will, it should have denied Octavia Novak's summary judgment. The court of civil appeals then held, in error, that Rhonda Ray Stevens must file suit in a separate proceeding to obtain a determination about the contractual nature of the 1968 will upon which she relies.

■ The P. Y. Tate and Jessie Marie Tate joint will has on its face and by its own terms the same indicia of a contract that we have found in other joint wills that we have examined. *Weidner v. Crowther*, 157 Tex. 240, 301 S.W.2d 621 (1957); *Murphy v. Slaton*, 154 Tex. 35, 273 S.W.2d 588 (1954); *Harrell v. Hickman*, 147 Tex. 396, 215 S.W.2d 876 (1948); *Nye v. Bradford*, 144 Tex. 618, 193 S.W.2d 165 (1946), 169 A.L.R. 1 (1947); *Wallace v. Turriff*, 531 S.W.2d 692 (Tex.Civ.App.—Tyler 1975, writ ref'd n. r. e.); *Leopold v. Sochat*, 303 S.W.2d 840 (Tex.Civ.App.—Fort Worth 1957, writ ref'd n. r. e.); *Sherman v. Goodson's Heirs*, 219 S.W. 839 (Tex.Civ.App.— Texarkana 1920, writ ref'd). We set forth the Tate will with emphasis upon the significant words:

THAT WE, P. Y. TATE AND JESSIE MARIE MOORE TATE, husband and wife of . . . for the purpose of making the best disposition of *our worldly affairs,* do hereby make and publish this *our last will and testament* . . .

It is our will and desire that the survivor of us P. Y. Tate or Jessie Marie Moore Tate, as the case may be, shall with the rights and authority below given, *have all the estate of every description, real, personal or mixed which either or both of us may own,* to be used, occupied, enjoyed and conveyed and expended and give deeds, bill of sale or dispose of in any manner that the survivor may see fit to do during the life of such survivor, *and that upon the death of such survivor, any of the said estate then remaining shall be given to the following person* : RHONDA RAY MYRICK, the daughter of Ed-

die Ray Myrick, subject to the following conditions, WITHOUT BOND:

*RHONDA RAY MYRICK, the daughter of Eddie Ray Myrick, may have all of our estate real or personal or mixed of every description, after both our deaths.* She may occupy, enjoy, sell, give bill of sale, or dispose of in any manner that she may see fit, (without bond).

*We hereby constitute and appoint the survivor of us as executor or executrix as the case might be of our last will and testament* and direct no bond or security be required. *In case of the death of both of us, then we constitute and appoint Rhonda Ray Myrick as executrix (Without Bond).*

By the terms of the will, Mrs. Tate as survivor, took all of the decedent's property with power to consume the estate. As we stated in *Weidner v. Crowther, supra,* concerning a contractual will, "[i]t would be manifestly unjust to permit the surviving party to the contract to disavow it and its obligations, as those obligations are incorporated in their will, after the other party has fully performed by abiding by it until his ability to revise it has been terminated by death." Cf. Young, *The Doctrinal Relationships of Concerted Wills and Contract,* 29 Tex.L.Rev. 439 (1951).

The second and third paragraphs of the Tate will closely resemble the second and third paragraphs of the will in *Weidner v.*

*Crowther,*[3] *supra,* 301 S.W.2d at 623, which we held was contractual on its face. As did the *Weidner* testators, each of our present testators undertook to dispose of his or her property in the event he or she was the first to die, in which event "all of the estate of every description . . . which either or both of us may own" passed to the survivor. The testators next disposed of his or her property in the event he or she was the last to die, in which event Rhonda Ray Myrick would have "all of our real or personal or mixed (property) of every description, after both of our deaths." There are some variances in the precise wording between the Weidner and the Tate wills, but there is no essential difference. Upon the basis of the words of the mutual will itself, the court concluded in *Weidner* that the parties intended to contract that all property owned by the survivor at death would pass to the named beneficiaries, including after-acquired property.

The language employed in the will construed in *Murphy v. Slaton,*[4] *supra,* 273 S.W.2d at 590, was also held to constitute a contractual will. When read as a whole, the will showed that it was executed to effect a planned disposition of "all the estate of every description, real, personal, or mixed which either or both of us may own at our death." The words are the same as those used in the Tate joint will except for the phrase "at our death," which appears in the Tate will, but in a later clause. Simi-

---

**3.** *First*: We hereby will and direct, that after the death of one or either of us, all our just debts or the debts of either of us and claims against our estate or the estate of either of us, shall be paid by the last survivor of us out of our estate.

*Second*: We mutually will, direct and devise, that after the death of either of us, all our property and estate, real, personal or mixed, and wether [sic] deemed common or separate estate, shall be inherited by and shall at once pass into the unrestricted possession of the last survivor of either of us in fee simple.

*Third*: We hereby further will and direct that after the death of the last survivor of us all our property and estate, real, personal, or mixed, common or separate, shall be inherited and divided equally, share and share alike,

among our three children, to-viz: Agnes May Weidner, Katy Lea Weidner and Homuth H. Weidner.

**4.** It is our will and desire that the survivor of us, B. H. Murphy or Annie E. Murphy, as the case may be, shall, with the rights and authority below given, have *all the estate of every description, real, personal or mixed, which either or both of us may own* at our death, to be used, enjoyed, occupied and conveyed by such survivor *for and during his or her life time,* as the case may be, and that upon the death of such survivor any of such estate then remaining shall be divided among the persons following and in the following manner, and subject to all the conditions and limitations hereinafter to be named, towit: * * *. [Emphasis added.]

larly, the court recognized that there was a common provision for the appointment of the survivor as executor or executrix. This court has also construed similarly worded wills as contractual in *Dougherty v. Humphrey*, 424 S.W.2d 617 (Tex.1968); *Harrell v. Hickman*, 147 Tex. 396, 215 S.W.2d 876 (1948); *Nye v. Bradford*, 144 Tex. 618, 193 S.W.2d 165 (1946), 169 A.L.R. 1 (1947).

Octavia Novak, in support of her argument that the 1968 will was not contractual, relies upon *Magids v. American Title Ins. Co.*, 473 S.W.2d 460 (Tex.1971); *Crain v. Mitchell*, 479 S.W.2d 956 (Tex.Civ.App.—Fort Worth 1972, writ dism'd); and *City of Corpus Christi v. Coleman*, 262 S.W.2d 790 (Tex.Civ.App.—San Antonio 1953, no writ). This court considered *Magids*, but the other two cases did not reach us and have no precedential value. We held that the reciprocal wills in *Magids* were not contractual. The two wills disclosed no more than an agreement that each person would make a will. When each did so, they fulfilled their agreement. Each will concerned property "of which I die possessed" and showed an intent to create a life estate "in all of my property." Neither will dealt with the entire community estate of both testators in a manner that affected the survivor's interest. The *Magids* will was not like the Tate will.

We come now to the judgment we should render in this case. We reverse the judgment of the court of civil appeals that the district court lacked jurisdiction to determine whether the 1968 will was contractual and in refusing to hold that it was contractual. The trial court correctly admitted the 1976 will to probate which operated to revoke the earlier will. The 1976 will bequeathed and devised certain property to Octavia Novak as well as naming her the independent executrix. It was for that reason that Rhonda Ray Stevens prayed that a constructive trust be imposed upon the estate. It is our opinion that such a trust should be imposed.

We reverse the judgments of the courts below and construe the 1968 will as a contract which should be enforced by impressing a constructive trust upon the property in the Tate estate. We remand the cause to the trial court with instructions that it render a judgment consistent with this opinion.